CENTURY BRICK CORPORATION OF
AMERICA, Plaintiff,

v.

William J. BENNETT, Defendant.

Civ. A. No. 1109—Erie.

United States District Court
W. D. Pennsylvania.

Nov. 9, 1964.

James A. Quisenberry, Erie, Pa., for plaintiff.

Petrillo, Cavanaugh & Falcone, Erie, Pa., for defendant.

WEBER, District Judge.

This is a diversity action between plaintiff, a Pennsylvania corporation having its principal office in Erie, Pennsylvania, and defendant, William J. Bennett, an individual residing in Buffalo, New York. There is before the court for disposition a motion by defendant to set aside summons and complaint on the grounds of the invalidity of service. The court will treat the motion as a motion to quash the service of process. Accompanying defendant's motion was an affidavit by defendant setting up facts purporting to show that defendant was induced to enter the jurisdiction of the court by trickery or deceit in order to procure service of the summons and complaint upon him.

The matter was set down for argument before the court and counsel for both parties were advised that the court would take testimony offered by either party at the time. At the time of hearing, defendant, the moving party, offered no testimony but relied upon the affidavit and cross-examination of plaintiff's witnesses. Plaintiff produced witnesses and the court on its own motion summoned the Deputy United States Marshal who made the service in question for testimony and cross-examination of both parties.

The evidence produced before the court established that defendant had been an agent or employee of the plaintiff corporation for sometime prior to the institution of the law suit. He was not a regular or salaried employee, but worked when called upon and received pay for each individual job. His duties were those of an "organizer" to set up the operating procedure of new franchised dealers who handle plaintiff's product.

Plaintiff's complaint alleges that said defendant engaged in certain unfair trade practices on behalf of a competing product, and asked that defendant be

enjoined from such practices and be required to account for monies collected in this activity. Plaintiff further alleged that it became aware of defendant's activities in this respect during the week of February 10 to 15, 1964. Plaintiff consulted with counsel and authorized counsel to prepare a complaint. There is no evidence that there was any discussion of this matter or any presentation of a claim or demand by plaintiff upon defendant prior to the service of the complaint in this case, and the evidence shows that there was certainly none before the filing of the complaint and delivery of the summons to the United States Marshal's office for service on the morning of July 1, 1964. The defendant alleged that he received a long distance telephone call from president of plaintiff corporation on June 29, 1964, requesting that he come to Erie, Pennsylvania, from his home in Buffalo, New York, at once in order to receive some new work assignments. In their testimony the officers of plaintiff corporation agreed that the defendant was summoned to Erie for business purposes and that the usual arrangements for defendant's visits to the home office in Erie, Pennsylvania, were made by a telephone call from the plaintiff to defendant requesting him to come to Erie for business conferences. Defendant's affidavit stated that he informed plaintiff's president that he would be at the plaintiff's office on Wednesday morning, July 1, 1964. Plaintiff's officers in testifying admitted that preparations were under way for filing and serving a complaint and summons on the defendant at the time of his appearance in Erie, although this testimony was qualified by the statement that the law suit would be filed and the complaint served if they were unable to settle their dispute with the defendant on that date. Plaintiff's affidavit asserts that he arrived at the Erie home office sometime around eleven o'clock on the morning of July 1, 1964, and that he had a preliminary conference with the plaintiff's advertising or public relations officer and then was taken to lunch with some of the officers of the corporation. On his return to the plaintiff corporation's office at about one o'clock on the afternoon of July 1, 1964, he was directed to the office of the president of the corporation where he found the president, the plaintiff's attorney, and a third man, later identified as a Deputy United States Marshal. Plaintiff's president and plaintiff's attorney left the room and the United States Marshal served the complaint and summons upon the defendant. Plaintiff's president testified that there was a demand on his part that defendant cease the alleged practices and a refusal on the part of the defendant. However, the president of plaintiff corporation could not establish the time of this conference and from the testimony of the other officers of plaintiff corporation it did not appear possible that there was such a conference prior to the filing of suit and the service of the summons and complaint upon defendant. The Deputy United States Marshal testified that he received the summons and complaint for service at about 10 a. m. on July 1, 1964, with directions that they be served on defendant at the plaintiff's office in Erie, Pennsylvania, that day. The Marshal did not recall whether he received a subsequent telephone call alerting him as to the presence of the defendant in Erie, but in any event the Marshal appeared at the plaintiff's business office at about 12:30 p. m., where he met the plaintiff's attorney and the president of plaintiff corporation. They were required to wait about one-half hour for the arrival of defendant and when defendant came to the building he came directly to the office where the president of plaintiff corporation, plaintiff's counsel and the Deputy United States Marshal were seated. Service was made immediately

In summary all of the testimony pointed to the conclusion that plaintiff had determined to institute suit against the defendant; that the facts necessary for the preparation of the complaint were placed in the hands of plaintiff's counsel sometime before the date of filing of the suit; that defendant received a telephone call

from the plaintiff's president requesting him to come to Erie to receive work assignments, and that the defendant was not a regular or salaried employee but was paid according to each job performed; that the defendant did not regularly visit the plaintiff's home office in Erie, Pennsylvania, but he usually came when summoned; that a complaint was prepared and filed by 10 a. m. on July 1, 1964, either prior to or approximately at the time of defendant's arrival at the Erie office of plaintiff corporation; and that arrangements were made for service upon the defendant at the time of filing. Finally, plaintiff's president admitted from the stand in answer to a question by the Court, that one of the motives for summoning defendant to come to plaintiff's office in Erie was to make him available for the service of the summons and complaint if it was determined that a suit would be filed.

The court was of the opinion that extensive inquiry as to the manner of service was demanded in this case where a question of abuse of the court's process was raised. The evidence presented to the court established in the court's mind a case of such abuse of process as to justify striking the return of service and quashing the service in the case.

█ The general rule applicable to questions of validity of service is stated in 72 C.J.S. Process § 39, p. 1049, as:

"Personal service is void if obtained by inveigling or enticing the person to be served into the territorial jurisdiction of the court by means of fraud and deceit, actual or legal, or by trick or device, and in such case defendant is not required to appear or defend. So service is void if obtained * * * by pretense of settlement, whether the matter of a settlement was first broached by plaintiff or defendant;"

See also 42 Am.Jur. Process § 35.

We cannot escape the conclusion that defendant was enticed to come to Erie, Pennsylvania, under the pretext of receiving new job assignments. We are convinced that the new job assignments was a pretext rather than an actual motive as shown by the fact that the suit was filed and service arranged with the United States Marshal prior to the time that any new job assignments or complaints of plaintiff could be discussed. While it may be argued that defendant customarily came to Erie to receive such assignments it was shown that in this instance defendant was called and told to come to Erie on this specific occasion for such an assignment. Whether or not the matter of a new job assignment was an actual misrepresentation there can be no doubt that the compelling motive for plaintiff's call to defendant was to make him available for the service of process. Similarly, plaintiff's evidence that there was to be a discussion about the alleged unfair trade practices of which defendant was accused prior to the filing of suit is overcome by the evidence that the suit was filed before any such discussion could have taken place. These facts distinguish this case from Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782, where there was evidence to support a finding that service of summons was only made after a bona-fide attempt to confer and settle.

The general rule cited above uses the words "fraud and deceit, actual or legal, or by trick or device". From our reading of the reported cases on this subject it does not appear that actual fraud is a necessary element. Any device, or artifice, or trickery, which induces the party to come into the jurisdiction is sufficient. See Eastburn v. Turnoff, 394 Pa. 316, 147 A.2d 353; Western States Refining Co. v. Berry, 6 Utah 2d 366, 313 P.2d 480; Mertens v. McMahon, 334 Mo. 175, 66 S.W.2d 127, 93 A.L.R. 1285.

The present question concerns the propriety of use of the court's process. While there may be no actual fraud present, nevertheless the whole of the testimony here reveals a contrived scheme by which the defendant was brought into the jurisdiction for the purpose of securing service of process on him. There is not even present here the element of

settlement of a controversy between the parties because the evidence is void of any indication that defendant was previously aware of plaintiff's objection to his conduct.

We are, therefore, of the opinion that defendant's presence in the jurisdiction was procured by artifice practiced by the plaintiff, unrelieved by any of the saving exceptions established in the reported cases, and that the service of the complaint and the summons in this case represented an abuse of the process of this court. Buchanan v. Wilson, 254 F.2d 849 (6th Cir. 1958); Oliver v. Cruson, 153 F.Supp. 74 (U.S.D.C.Mont.1957).

### ORDER

And now, this 9th day of November, 1964, service of summons and complaint made upon the defendant, William J. Bennett, made on July 1, 1964, is quashed, and the return of service is stricken.